KEPPLE DISNEY, *Appellee,* v. MICHAEL LANG et al.,
*Appellants.*

No. 18,321.

SYLLABUS BY THE COURT.

1. SALE—*False Representations—Number of Acres in Railroad Right of Way.* Fraudulent representations made by the grantor of land as to the number of acres taken and occupied as the right of way of a railroad through the tract sold, and upon which the grantee relied to his injury, entitle him to a recovery of damages for the loss actually sustained, although he learned from the instrument of conveyance and other sources that the railroad company had a right of way over the land but did not know the extent of the same.

2. ——— *Evidence Sufficient to Go to Jury—Demurrer Erroneously Sustained.* On the testimony in the record it. is held that there was a question of fact for the determination of the jury as to the fraudulent representations of the grantor and the reliance of the grantee thereon to his damage, and therefore a demurrer to the evidence offered by the grantee in support of his defense should have been overruled.

Appeal from Ellis district court. Opinion filed July 5, 1913. Reversed.

*James T. Nolan,* of Ellis, and *J. H. Simminger,* of Hays, for the appellants.

*E. C. Flood,* of Ellis, and *E. A. Rea,* of Hays, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an action to recover upon a number of promissory notes and to foreclose a mortgage given to secure their payment. On April 2, 1909, Michael Lang purchased a half section of land from Kepple Disney, the appellee, for $11,119, taking it subject to an existing mortgage for $1119 and paying $3500 in cash and executing to Disney notes aggregating $6500. At the same time Lang and his wife executed a mortgage upon the tract purchased to secure

the payment of the notes. The Union Pacific railway passed through the tract purchased, and in the deed of conveyance it was recited that the tract contained "Three Hundred Twenty (320) acres, more or less, and less the Union Pacific right of way." The first note for $500, which became due October 1, 1909, was paid by Lang, but the notes accruing October 1, 1910, and October 1, 1911, were not paid, and on October 26, 1911, this action was begun. In his answer Lang defended upon the ground that Disney had fraudulently misrepresented the facts to him as to the quantity of land in the tract, or rather that he had falsely represented at the time of the sale that only twelve acres of the tract had been taken as right of way for the railroad, when as a matter of fact the right of way was four hundred feet wide and occupied about fifty acres of the half section. He therefore insisted that there was a deficiency of about thirty-eight acres, which, according to the purchase price per acre, would amount to $1320.12, and this sum he contended should be credited on the notes executed by him. He also claimed that he was entitled under the facts to a rescission and the cancellation of the obligations which he had given. Many questions were raised by appellant on preliminary rulings on the trial, but we find nothing substantial in them.

After proof of the execution of the notes and mortgage had been given by appellee the appellants offered testimony in support of their defense, to the effect that when Lang contracted to purchase the land from appellee he inquired as to the extent of the right of way of the railroad and appellee answered that only twelve acres were taken out of the tract for that purpose. Later, when the parties met for the execution of the title papers, including the deed and mortgage, appellant had the scrivener ask the appellee how many acres of the tract were included in the right of way, and appellee again represented that the easement only cov-

ered twelve acres of the land. Appellant testified that
he relied on these representations and would not have
paid the amount of money nor assumed the obligations
which he had done if he had known that the repre-
sentations were untrue and that he was receiving
about thirty-eight acres less than he was led to under-
stand that there was in the tract. Other evidence of
the same import was given, with meager testimony as
to the amount of the loss, after which the court sus-
tained a demurrer to the evidence of appellants and
directed a verdict in favor of the appellee for the
amount due on the notes, and at the same time entered
a judgment foreclosing the mortgage. In this there
was error. Under the authority of *Speed v. Hollings-
worth,* 54 Kan. 436, 38 Pac. 496, false representations
as to the quantity of land and the extent of the right
of way were material facts rather than mere expres-
sions of opinion, and if fraudulently made, and relied
on by appellant to his injury, he is entitled to recover
the actual loss sustained. (See, also, *Abmeyer v. Bank,*
76 Kan. 877, 92 Pac. 1109; *Circle v. Potter,* 83 Kan.
363, 111 Pac. 479; *Morrow v. Bonebrake,* 84 Kan. 724,
115 Pac. 585; *Maffet v. Schaar,* 89 Kan. 403, 131 Pac.
589.)

The trial court proceeded on the theory that as ap-
pellant knew from the deed given him that there was
a right of way of some width across the tract, and that
as he had an opportunity while working on the rail-
road to observe the extent of the right of way, he could
not have been deceived as to the acreage, and, further,
that there was nothing in his testimony proving fraud-
ulent misrepresentation. While he was aware that
there was a right of way over the land it was not easy
for him to ascertain its extent, and even if its bounda-
ries were known to him it was not easy for him to have
learned, by ordinary inspection, the acreage included
in the right of way. Anything like an accurate esti-
mate could not have been made by an ordinary inspec-

tion, nor without considerable trouble and expense. In *Speed v. Hollingsworth,* supra, it was contended that the buyer could not rely on representations of the seller as to the quantity, as the buyer was on the land and therefore could, by inquiry and inspection, have ascertained the real truth of the matter. The court, however, said that one who makes false representations with intent to deceive, and which are relied on by the other party to his injury, can not defend an action for damages for the deceit on the ground that the injured party could, by inquiry and inspection, have discovered the fraud; and quoting from Bigelow on Fraud it was said:

" 'It matters not  .  .  .  that a person misled may be said in some loose sense to have been negligent. .  .  . For it is not just that a man who has deceived another should be permitted to say to him, "You ought not to have believed or trusted me," or "You were yourself guilty of negligence." ' "  (p. 440.)

There was proof sufficient, we think, to make a *prima facie* case that the false and fraudulent representations were made. Some of the testimony in behalf of appellee tended to show that Lang was not misled by the false statements as to the extent of the right of way. If the representations were in fact false, and appellant himself knew them to be false at the time, or if, from any source, he learned of the acreage of the right of way prior to the purchase and therefore did not rely upon the representations made by appellee to him, he can not recover damages. Another circumstance which tends to discredit his claim is that he made a payment on the land after he had been told that the right of way exceeded twelve acres. However, he was not concluded by that testimony, and having offered testimony tending to show that the false representations were made, and some as to his reliance on these representations, it became a question of fact for the jury, and the court was not warranted in taking the

Disney v. Lang.

case from the jury on the demurrer to the evidence and practically determining that there was no evidence tending to sustain the claim of fraudulent representations.

It is also said that there is a lack of testimony as to the damages sustained, and it is true that counsel for appellants were not very successful in getting testimony before the jury as to the extent of appellants' damages. Most of the evidence related to the value of the land at the time of the trial instead of at the time the alleged fraud was practiced, but we are of opinion that at least enough sifted in to overcome the demurrer to the evidence. It may be said, too, that if the false representations were made as testified to by appellant, and they were relied upon by appellants, the value of the land at the time of the transaction is not the measure of damages. The railroad company only has an easement over the land, the fee remaining in the abutting owner. The railroad, of course, is entitled to the exclusive use of the right of way while it is used for railroad purposes, but any right not inconsistent with the easement remains in the abutting owner, and if the use of the land for railroad purposes should be abandoned the land would revert to the abutting owner. (*Abercrombie v. Simmons*, 71 Kan. 538, 81 Pac. 208, 1 L. R. A., n. s., 806, 114 Am. St. Rep. 509.) If the appellants are entitled to any damages it can be no more, in any event, than the value of the interest or right of which they have been deprived by the fraud of the appellee in so much of the right of way as is in excess of twelve acres.

No other material error is found in the record, but for the ruling sustaining the demurrer to the evidence of appellants the judgment must be reversed and the cause remanded for a new trial.